# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### CEDAR RAPIDS DIVISION

JERRY L. NIBECK,

        Plaintiff,

vs.

MARION POLICE DEPARTMENT,
ADAM CIRKL, MARK KJORMOE and
DONNA SUE JEWELL,

        Defendants.

No. 16-CV-114-LRR

**ORDER**

_____

## *TABLE OF CONTENTS*

*I.*    *INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *1*

*II.*   *RELEVANT PROCEDURAL HISTORY* . . . . . . . . . . . . . . . . . . . . . . . *2*

*III.*  *RELEVANT FACTUAL BACKGROUND* . . . . . . . . . . . . . . . . . . . . . . *3*

     *A.*    *Parties* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *3*
     *B.*    *Dispute* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *3*

*IV.*  *MOTION TO EXCLUDE* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *5*

*V.*   *MOTIONS TO DISMISS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *7*

     *A.*    *Applicable Standard* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *7*
     *B.*    *Section 1983* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *8*
     *C.*    *Unlawful Police Misconduct* . . . . . . . . . . . . . . . . . . . . . . . . . *12*
     *D.*    *Defamation* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *16*
     *E.*    *Intentional Infliction of Emotional Distress* . . . . . . . . . . . . . . *17*
     *F.*    *Qualified Immunity* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *20*

*VI.*  *CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *22*

## *I.  INTRODUCTION*

The matters before the court are Defendants Marion Police Department ("MPD"),
Adam Cirkl and Mark Kjormoe's (collectively, "MPD Defendants") "Motion to Dismiss
Amended Complaint" ("MPD Defendants' Motion to Dismiss") (docket no. 8) and

"Motion to Exclude Evidence" ("Motion to Exclude") (docket no. 16) and Defendant

Donna Sue Jewell's pro se "Motion to Dismiss" ("Jewell Motion to Dismiss") (docket no.

14).[1]

## II. RELEVANT PROCEDURAL HISTORY

On July 18, 2016, Plaintiff Jerry L. Nibeck filed a pro se Amended Complaint

(docket no. 6) alleging four claims: (1) violations of his First and Fourth Amendment

rights and false arrest against Cirkl and Kjormoe, pursuant to 42 U.S.C. § 1983; (2)

"Unlawful Police Misconduct" against the MPD Defendants; (3) defamation against

Jewell; and (4) intentional infliction of emotional distress against all Defendants. On

August 1, 2016, the MPD Defendants filed the MPD Defendants' Motion to Dismiss. On

August 15, 2016, Nibeck filed a Resistance (docket no. 12).[2] On August 16, 2016, Jewell

filed the Jewell Motion to Dismiss. On August 17, 2016, Nibeck provided the court with

a disk containing "[e]vidence . . . made by policeabuse.com." *See* Notice of Filing

---

[1] Jewell filed a letter dated August 13, 2016, which does not bear a title but requests that the "lawsuit be dropped." Jewell Motion to Dismiss at 1. "[P]ro se litigants are held to a lesser pleading standard than other parties." *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 849 (8th Cir. 2014) (quoting *Fed. Express Corp. v. Holowecki*, 552 U.S. 389, 402 (2008)). As such, if "the essence" of a pro se filing is "discernible," the court should construe it "within the proper legal framework." *See id.* (quoting *Stone v. Harry*, 364 F.3d 912, 915 (8th Cir. 2004)). The court construes the August 13, 2016 letter as a motion to dismiss the claims against her in the instant action.

[2] In addition to resisting the MPD Defendants' Motion to Dismiss, the Resistance also requests "[m]ore time . . . [t]o seek a lawyer." Resistance at 1. Nibeck does not describe any prior attempts to obtain a lawyer since filing the Amended Complaint, and he does not describe how an extension of time will aid in any such future attempt. *See generally id.* Further, the court previously denied an earlier request for an extension that was based on similar grounds. *See* Aug. 10, 2016 Order (docket no. 11). Therefore, to the extent the Resistance requests an extension of time to supplement the Resistance after obtaining counsel, such request is denied.

Evidence CD (docket no. 15).[3]  On August 22, 2016, the MPD Defendants filed the Motion to Exclude.  That same date, the MPD Defendants filed a Reply (docket no. 17) to the Resistance.  On October 10, 2016, Jewell filed a supplemental brief ("Jewell Supplemental Brief") (docket no. 23-1) in support of the Jewell Motion to Dismiss.  No party requests oral argument on the motions and the court finds that oral argument is unnecessary.  The matters are fully submitted and ready for decision.

## III.  RELEVANT FACTUAL BACKGROUND

Accepting all factual allegations in the Amended Complaint as true and drawing all reasonable inferences in favor of Nibeck, the facts are as follows.

### A.  Parties

Nibeck is an individual residing in Marion, Iowa.  Amended Complaint at 3.  At all times relevant to the Amended Complaint, Jewell was Nibeck's neighbor and also resided in Marion, Iowa.  *Id.* at 4.  MPD is a police department serving Marion, Iowa.  *Id.* at 3.  Cirkl and Kjormoe are police officers employed by MPD.  *Id.* at 3-4.

### B.  Dispute

The events at issue involve a series of posters that Nibeck displayed on the fence around his property.  The posters contained various messages and were visible to the public.

On May 27, 2014, Nibeck displayed a poster on his fence in memory of his father.  *Id.* at 7.  On May 28, 2014, Nibeck discovered that the poster had been torn off the fence and thrown into his yard.  *Id.*  Nibeck apparently informed MPD of the situation.  *See id.* (stating that MPD officers were aware that Nibeck displayed posters on his fence but did not see anyone remove the posters).  In an attempt to discover who had torn and removed

---

[3] On August 25, 2016, Nibeck filed a notice informing the court that he provided the disk of evidence to all Defendants and further providing the court with letters dated July 22, 2016 that were previously filed in the Jewell Motion to Dismiss.  *See* Notice of Evidence (docket no. 18).

the poster, Nibeck hung additional posters on his fence and hoped to catch the perpetrator if he or she repeated such conduct. *Id.* During the period when Nibeck displayed additional posters, Jewell's daughter told Nibeck that there was no point hanging the posters because her father would remove them. *Id.*

On June 27, 2014, a girl from Nibeck's neighborhood approached Nibeck at his home. *Id.* at 4. At the request of Jewell's husband, the girl asked Nibeck to remove the posters. *Id.* Nibeck refused to remove the posters because they had "nothing to do with neighbors." *Id.* Again acting at the request of Jewell's husband, the girl called 911 to complain about Nibeck and his posters. *Id.* The 911 call was the first formal complaint made against Nibeck by his neighbors. *See id.* at 5.

Cirkl and Kjormoe reported to Nibeck's home in response to the 911 call. *Id.* at 4. When they arrived, Cirkl and Kjormoe entered Nibeck's home without a warrant and instructed Nibeck to remove the posters or he would be arrested. *Id.* at 5. Cirkl and Kjormoe told Nibeck that the messages on the posters offended Nibeck's neighbors. *Id.* at 4. Particularly, the messages included some reference to HIV. *Id.* at 5. Cirkl and Kjormoe asked Nibeck about the reference to HIV, and Nibeck stated that it was an acronym for "home improvement venture." *Id.* Kjormoe disputed Nibeck's claim of HIV's meaning. *Id.* at 6. Cirkl and Kjormoe believed that the posters constituted harassment and seized the posters without a warrant. *Id.* at 5. Jewell and Jewell's husband offered to give Cirkl and Kjormoe others of Nibeck's posters that they had previously removed from his property. *Id.* at 6. During their interaction with Nibeck, Cirkl and Kjormoe believed that Nibeck was under the influence of alcohol. *Id.* at 5.

While the interaction was ongoing, Kjormoe asked Jewell if she wished to file a complaint against Nibeck. *Id.* at 6. Jewell stated that she did. *Id.* Jewell requested to use Kjormoe's notes to aid her as she wrote the complaint. *Id.* Kjormoe permitted Jewell to retrieve his notes from the front seat of the police cruiser. *Id.*

Eventually, Cirkl and Kjormoe placed Nibeck under arrest. *Id.* They did not read Nibeck his *Miranda* rights and Nibeck was not informed of the charges against him. *Id.* Nibeck was booked at the Linn County Jail. *Id.* At the jail, Nibeck asked the booking officer to administer an alcohol breath test, but the booking officer declined to do so at that time. *Id.* at 6-7. Nibeck received an alcohol breath test approximately three hours after his booking, and the test registered a negative reading. *Id.* at 7. Nibeck shared a jail cell with another individual who urinated in the cell and on Nibeck. *Id.*

Nibeck suspects Cirkl and Kjormoe of tampering with audio and video recordings capturing the events leading up to his arrest. *Id.* at 6. Nibeck also suspects Cirkl and Kjormoe of including false information in their reports. *Id.*

### IV. MOTION TO EXCLUDE

In addition to the allegations in the Amended Complaint, detailed above, Nibeck has also submitted various evidentiary materials expanding and elaborating on his allegations. *See* Resistance at 2-16 (materials entitled "Investigation and report for Jerry Lee Nibeck" and "Expert Report"); Notice of Filing Evidence CD. In the Motion to Exclude, the MPD Defendants argue that these materials must be excluded from consideration of the motions to dismiss because they are "matter[s] outside the complaint." *See* Motion to Exclude at 2.

Federal Rule of Civil Procedure 12(b)(6) provides that a party may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A court considering a 12(b)(6) motion to dismiss may consider only the allegations included in the complaint, as well as "matters incorporated by reference or integral to the claim, items subject to judicial notice, and matters of public record." *U.S. ex rel. Kraxberger v. Kan. City Power & Light Co.*, 756 F.3d 1075, 1083 (8th Cir. 2014) (alteration omitted) (quoting *Miller v. Redwood Toxicology Lab., Inc.*, 688 F.3d 928, 931 n.3 (8th Cir. 2012)). If a party presents "matters outside the pleadings" when litigating

a 12(b)(6) motion to dismiss, the court must either exclude such matters or convert the 12(b)(6) motion to dismiss into a motion for summary judgment and allow all parties an opportunity to present materials pertinent to summary judgment. *See* Fed. R. Civ. P. 12(d). "Matters outside the pleadings" include "any written or oral evidence in support of or in opposition to the pleading that provide some substantiation for and do not merely reiterate what is said in the pleadings." *McAuley v. Fed. Ins. Co.*, 500 F.3d 784, 787 (8th Cir. 2007) (internal quotation marks omitted) (quoting *Gibb v. Scott*, 958 F.2d 814, 816 (8th Cir. 1992)). Materials that "rais[e] new facts not alleged in the pleadings" also constitute "matters outside the pleadings." *See Hamm v. Rhone-Poulenc Rorer Pharm., Inc.*, 187 F.3d 941, 948 (8th Cir. 1999).

The investigation report and evidence disk both appear to be the products of an investigation conducted after the events described in the Amended Complaint by an entity called "policeabuse.com." *See* Resistance at 8 (summary of investigator's activity, describing investigator's involvement with policeabuse.com); Notice of Filing Evidence CD at 1 (describing "one Evidence CD made by policeabuse.com"). The Amended Complaint does not incorporate these materials by reference and they are not integral to Nibeck's claim. *Cf. Rosenblum v. Travelybus.com Ltd.*, 299 F.3d 657, 661 (7th Cir. 2002) (stating that the exception permitting courts to review materials integral to a claim "is 'aimed at cases interpreting, for example, a contract.'" (quoting *Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998))). Likewise, the materials are not subject to judicial notice and are not matters of public record. The evidentiary materials submitted by Nibeck are more accurately described as substantiation of his claims and/or factual development beyond the facts alleged in the pleadings. Therefore, they are matters outside the pleadings and shall be excluded for purposes of the motions to dismiss. Accordingly, the court shall grant the Motion to Exclude and the court will consider only the allegations included in the Amended Complaint in ruling on the motions to dismiss.

## V. MOTIONS TO DISMISS

In the MPD Defendants' Motion to Dismiss, the MPD Defendants argue that the Amended Complaint should be dismissed as to the claims against the MPD Defendants pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted. MPD Defendants' Motion to Dismiss at 1. The MPD Defendants also argue that, in the event the court dismisses Nibeck's federal claims, the court should decline to exercise supplemental jurisdiction over any remaining state law claims. "Brief in Support of MPD Defendants' Motion to Dismiss" ("MPD Defendants' Brief") (docket no. 8-1) at 13-14. In the Jewell Motion to Dismiss, Jewell argues that the Amended Complaint should be dismissed as to the claims against her pursuant to Rule 12(b)(6). Jewell Supplemental Brief at 2-5. Jewell also argues that, in the event the court dismisses Nibeck's federal claims, the court should decline to exercise supplemental jurisdiction over any remaining state law claims. *Id.* at 5-6. Nibeck resists the motions to dismiss. *See* Resistance at 1.

### A. Applicable Standard

The Federal Rules of Civil Procedure provide for dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When analyzing a Rule 12(b)(6) motion, the court must accept all of the factual allegations in the complaint as true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[F]or the purposes of a motion to dismiss [the court] must take all of the factual allegations in the complaint as true."). To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Varga v. U.S. Bank Nat'l Ass'n*, 764 F.3d 833, 838-39 (8th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678). This standard requires a complaint to "contain factual allegations sufficient 'to

raise a right to relief above the speculative level.'" *Parkhurst v. Tabor*, 569 F.3d 861, 865 (8th Cir. 2009) (quoting *Twombly*, 550 U.S. at 555). "Where the allegations show on the face of the complaint [that] there is some insuperable bar to relief, dismissal under Rule 12(b)(6) is appropriate." *Benton v. Merrill Lynch & Co., Inc.*, 524 F.3d 866, 870 (8th Cir. 2008).

### B. Section 1983

In Count 1, pursuant to 42 U.S.C. § 1983, Nibeck alleges that Cirkl and Kjormoe violated his First and Fourth Amendment rights under color of state law. Amended Complaint at 8. Specifically, Nibeck alleges that Cirkl and Kjormoe violated his First Amendment rights by arresting him for displaying messages on his posters and violated his Fourth Amendment rights by arresting him without a warrant or probable cause. *See id.* at 8-9. Cirkl and Kjormoe argue that Count 1 fails to state a claim with respect to the First Amendment because they "had probable cause to believe" that Nibeck's posters constituted harassment and, therefore, were not protected under the First Amendment. MPD Defendants' Brief at 5-6. Cirkl and Kjormoe argue that Count 1 fails to state a claim with respect to the Fourth Amendment because they "had probable cause to arrest Nibeck for either harassment or for public intoxication" and, therefore, the warrantless arrest of Nibeck did not run afoul of the Fourth Amendment. *Id.* at 6-7.

To state a § 1983 claim alleging a violation of First Amendment rights, the Amended Complaint must allege sufficient facts that Cirkl and Kjormoe deprived Nibeck of his right to free speech when they arrested him for the messages displayed on his posters. *See Smithson v. Aldrich*, 235 F.3d 1058, 1063 (8th Cir. 2000). However, not all speech is protected by the First Amendment. "Free speech protections do not extend . . . to certain categories or modes of expression, such as obscenity, defamation, and fighting words." *Phelps-Roper v. Koster*, 713 F.3d 942, 948 (8th Cir. 2013) (quoting *Doe v. Pulaski Cty. Special Sch. Dist.*, 306 F.3d 616, 622 (8th Cir. 2002) (en banc)). Iowa's

harassment statute makes it unlawful to communicate a message "without legitimate purpose and in a manner likely to cause the other person annoyance or harm" and with the specific "intent to intimidate, annoy, or alarm another person." Iowa Code § 708.7(1)(a)(1). Harassment, as defined in the Iowa Code, is not protected by the First Amendment. *See State v. Evans*, 672 N.W.2d 328, 331 (Iowa 2003).

To state a § 1983 claim alleging a violation of Fourth Amendment rights based on an unlawful arrest, the Amended Complaint must allege sufficient facts that Cirkl and Kjormoe lacked probable cause when they arrested Nibeck without a warrant. *See Gilmore v. City of Minneapolis*, __ F.3d __, __, 2016 WL 4758552, at *2 (8th Cir. Sept. 13, 2016) ("A warrantless arrest is consistent with the Fourth Amendment if it is supported by probable cause . . . ." (quoting *Borgman v. Kedley*, 646 F.3d 518, 522-23 (8th Cir. 2011))). "A law enforcement officer has probable cause 'when the totality of the circumstances at the time of the arrest are sufficient to lead a reasonable person to believe that the defendant has committed or is committing an offense.'" *Id.* (internal quotation marks omitted) (quoting *Borgman*, 646 F.3d at 523).

Accepting the allegations in the Amended Complaint as true, the following comprises the "totality of the circumstances" from which Cirkl and Kjormoe determined there was probable cause to arrest Nibeck for harassment: (1) they received a 911 call complaining about Nibeck's posters, (2) they learned that Nibeck's posters offended his neighbors, (3) they were given additional iterations of Nibeck's posters that Jewell and her husband had in their possession and (4) the posters referenced HIV. From these circumstances, Cirkl and Kjormoe may have reasonably believed that the posters were likely to annoy another person. *See* Iowa Code § 708.7(1)(a)(1). Such conclusion is made reasonable merely by the fact that Nibeck's neighbors communicated that the posters were offensive. However, based on the allegations in the Amended Complaint, the neighbors' complaints do not make it reasonable to believe that Nibeck displayed the posters with a

specific intent to "intimidate, annoy, or alarm." *See id.* In fact, the Amended Complaint's only indications of Nibeck's intent for displaying the posters are allegations that he intended the posters to honor his father and that the posters had "nothing to do with neighbors." Amended Complaint at 4, 7. Absent any allegations undermining Nibeck's stated intent, the court declines to infer an intent to harass and, by extension, declines to infer that Nibeck's speech is unprotected by the First Amendment. *See, e.g.*, *Derosier v. Balltrip*, 149 F. Supp. 3d 1286, 1292-93 (D. Colo. 2016) (at motion to dismiss stage, defendant-officers lacked probable cause to arrest the plaintiff for harassment where the plaintiff told newspaper staff that he would "take a shot at" any delivery persons that delivered a newspaper to his residence and where the complaint alleged only that the "[p]laintiff's intent was to stop the littering of his property"); *Barboza v. D'Agata*, 151 F. Supp. 3d 363, 371-72 (S.D.N.Y. 2015) (holding that defendant-officers violated the plaintiff's First Amendment rights by arresting him for delivering a written message stating "fuck your shitty town bitches" because, although the recipients of the message "were upset and alarmed by it," the speech did not belong to any category of message exempted from First Amendment protections).

Cirkl and Kjormoe argue that probable cause existed to arrest Nibeck for harassment because Nibeck continued to display the posters after he became aware that neighbors found them offensive. *See* MPD Defendant's Brief at 6. If known to Cirkl and Kjormoe, this fact might indicate that Nibeck had a specific intent to annoy or alarm his neighbors. *See Evans*, 672 N.W.2d at 331 (recognizing that intent to harass may be inferred if a person knows or should know "that his conduct would alarm" the recipient of the message). However, although the Amended Complaint alleges that Nibeck insisted on displaying his posters after learning that they offended his neighbors, *see* Amended Complaint at 7, it does not allege that Cirkl and Kjormoe were aware of this fact. Instead, the Amended Complaint alleges that Nibeck's neighbors never complained to the police

prior to the June 27, 2014 incident. As such, according to the Amended Complaint, the circumstances that Cirkl and Kjormoe now point to in support of probable cause were not known to them at the time they arrested Nibeck. Therefore, such circumstances cannot furnish probable cause. *See Kiser v. City of Huron*, 219 F.3d 814, 816 (8th Cir. 2000) (stating that probable cause must be based on "facts known to the officer" (quoting *Olinger v. Larson*, 134 F.3d 1362, 1366 (8th Cir. 1998))). Furthermore, the Amended Complaint alleges only that the posters included the word "HIV." There is nothing inherent about the word "HIV" to permit a reasonable belief that Nibeck intended the posters to be intimidating, annoying or alarming—regardless of whether it referred to "home improvement venture," as Nibeck claims, or "human immunodeficiency virus," as is more common. Therefore, as alleged in the Amended Complaint, the message on Nibeck's posters cannot itself furnish probable cause.

The evidence may ultimately reflect that Cirkl and Kjormoe had probable cause to arrest Nibeck for harassment, such that his conduct was unprotected by the First Amendment. *See Ornelas v. United States*, 517 U.S. 690, 703 (1996) (recognizing that probable cause determinations are fact intensive). However, at this stage of the proceedings, the court must accept the facts as alleged in the Amended Complaint and draw all reasonable inferences in favor of Nibeck. Viewed in this fashion, the court finds that the Amended Complaint alleges Cirkl and Kjormoe lacked probable cause to arrest Nibeck for harassment. Therefore, Nibeck has sufficiently stated a § 1983 claim alleging a violation of his First Amendment rights.

Cirkl and Kjormoe argue that, even if they lacked probable cause to arrest Nibeck for harassment, they had probable cause to arrest him for public intoxication, such that their arrest of Nibeck did not violate the Fourth Amendment. *See* MPD Defendants' Brief at 7. Cirkl and Kjormoe emphasize that Iowa law makes it a crime to be intoxicated or to simulate intoxication in a public place. *Id.* (citing Iowa Code § 123.46). However, the

Amended Complaint does not allege any facts supporting a reasonable belief that Nibeck was intoxicated or simulating intoxication. Instead, it only alleges that Cirkl and Kjormoe "assumed" that Nibeck was intoxicated. Amended Complaint at 5. Additionally, even if the Amended Complaint could be construed to allege that Nibeck was intoxicated or simulating intoxication, it alleges that the events giving rise to Nibeck's arrest occurred on his property, which could not reasonably be viewed by Cirkl and Kjormoe as a public place. Accepting all allegations in the Amended Complaint as true, Cirkl and Kjormoe lacked probable cause to arrest Nibeck for public intoxication and lacked probable cause to arrest him for harassment. Therefore, Nibeck has sufficiently stated a § 1983 claim alleging a violation of his Fourth Amendment rights. Accordingly, the court shall deny the MPD Defendants' Motion to Dismiss with respect to Count 1.

### B. Unlawful Police Misconduct

In Count 2, Nibeck alleges that the MPD Defendants engaged in unlawful police misconduct. Amended Complaint at 10.[3] Specifically, Nibeck alleges that the MPD Defendants unlawfully seized his posters without a warrant, failed to advise Nibeck regarding his *Miranda* rights and the charges against him and subjected him to poor treatment at the jail. *See id.* at 10-11. The court construes Count 2 to allege § 1983 claims that the MPD Defendants deprived Nibeck of his Fourth Amendment right against unreasonable search and seizure (seizure of posters), his Fifth Amendment right against

---

[3] Nibeck also references "wrongful [a]rrest" in Count 2. *See* Amended Complaint at 10. However, the specific allegations associated with Count 2 do not implicate the facts of Nibeck's arrest, but instead implicate other allegedly unlawful actions taken by the MPD Defendants. *See id.* at 10-11. Nibeck's allegations implicating the wrongfulness of his arrest are fully addressed in Count 1. Therefore, the court construes Count 1 as raising claims with respect to Nibeck's arrest and construes Count 2 as raising claims with respect to the MPD Defendants' other actions surrounding Nibeck's arrest. *See Topchian*, 760 F.3d at 849 (requiring the court to construe pro se pleadings "within the proper legal framework" (quoting *Stone*, 364 F.3d at 915)).

self incrimination (absence of *Miranda* rights), his Sixth Amendment right to be informed of the accusations against him (non-communication of charges) and his Fourteenth Amendment rights implicated by conditions of pretrial confinement (night spent in jail).

The MPD Defendants argue that Count 2 fails to state a claim with respect to the Fourth Amendment because the plain view doctrine permitted Cirkl and Kjormoe to seize the posters without a warrant. MPD Defendants' Brief at 9-10. The MPD Defendants argue that Count 2 fails to state a claim with respect to the Fifth Amendment because Cirkl and Kjormoe did not subject Nibeck to custodial interrogation warranting advisement of Nibeck's *Miranda* rights. *Id.* at 10. The MPD Defendants argue that Count 2 fails to state a claim with respect to the Fourteenth Amendment because the MPD Defendants are distinct from the Linn County Jail, which is the only entity implicated in Nibeck's Fourteenth Amendment allegations. *Id.* at 11. The MPD Defendants do not address Nibeck's allegation that they failed to inform him of the charges against him.

The Fourth Amendment does not protect against all searches and seizures, but instead protects only against "unreasonable" searches and seizures. U.S. Const. amend. IV. A warrantless seizure of private property is per se unreasonable and in violation of the Fourth Amendment "unless the seizure was supported by one of what are commonly referred to as the warrant exceptions." *PPS, Inc. v. Faulkner Cty., Ark.*, 630 F.3d 1098, 1102 (8th Cir. 2011) (citing *Minnesota v. Dickerson*, 508 U.S. 366, 372 (1993)). The plain view doctrine is one such warrant exception and makes the seizure of property presumptively reasonable "if the seizing officer is (1) 'lawfully in a position from which to view the object, (2) the incriminating character of the object is immediately apparent, and (3) the officer has a lawful right of access to the object.'" *Id.* at 1103-04 (alterations omitted) (quoting *United States v. Muhammad*, 604 F.3d 1022, 1027 (8th Cir. 2010)). "Such seizures must still meet the probable cause standard." *Id.* at 1104. As discussed above, based on the facts alleged in the Amended Complaint, Cirkl and Kjormoe did not

have probable cause to believe that Nibeck's posters were "incriminating" because there was no probable cause of any underlying criminal activity. Therefore, as alleged, their warrantless seizure of the posters is not supported by the plain view doctrine and is unreasonable under the Fourth Amendment. As such, Nibeck has sufficiently stated a § 1983 claim against Cirkl and Kjormoe alleging a violation of his Fourth Amendment rights.[4]

The Fifth Amendment guarantees against compelled self incrimination. U.S. Const. amend. V. The protections created in *Miranda v. Arizona*, 384 U.S. 436 (1966) serve as constitutional safeguards of Fifth Amendment rights but do not create "a 'constitutional right' equivalent to the Fifth Amendment itself." *Hannon v. Sanner*, 441 F.3d 635, 637 (8th Cir. 2006). As such, violations of *Miranda* may be remedied by suppression of evidence, but may not be remedied in a § 1983 claim. *See id.* at 638. With respect to the Fifth Amendment, Nibeck only "alleges that Defendant Officers failed to read his rights," as required under *Miranda*. Amended Complaint at 11. Because *Miranda* violations may not be remedied in a § 1983 claim, Nibeck has failed to state a claim against the MPD Defendants alleging a violation of the Fifth Amendment.

The Sixth Amendment guarantees that criminal defendants shall be informed of the charges brought against them. U.S. Const. amend. VI. However, "[w]hile it is assuredly good police practice to inform a person of the reason for his arrest at the time he is taken into custody, [the Supreme Court has] never held that to be constitutionally required." *Devenpeck v. Alford*, 543 U.S. 146, 155 (2004). With respect to the Sixth Amendment, Nibeck only "alleges that Defendant Officers . . . failed to explain the charges instigated against him." Amended Complaint at 11. Because it was not "constitutionally required" that Cirkl and Kjormoe inform Nibeck of the reason for his arrest, Nibeck has failed to

---

[4] The court will address the question of whether Nibeck has stated a claim against MPD below.

state a claim against the MPD Defendants alleging a violation of the Sixth Amendment.

The Fourteenth Amendment guarantees that pretrial detainees shall not be subject to conditions of confinement that amount to punishment. *Morris v. Zefferi*, 601 F.3d 805, 809 (8th Cir. 2010) ("Under the Fourteenth Amendment, a pretrial detainee's constitutional rights are violated if the detainee's conditions of confinement amount to punishment." (citing *Bell v. Wolfish*, 441 U.S. 520, 535 (1979))). Here, the Amended Complaint does not allege that the MPD Defendants had any involvement in the conditions of Nibeck's confinement. Instead, the allegations relate to the operations of the Linn County Jail, *see* Amended Complaint at 6-7, 11, and Nibeck does not allege that the MPD Defendants had authority over jail operations. Because Nibeck does not allege facts connecting the MPD Defendants to the alleged Fourteenth Amendment violation that he complains of, Nibeck has failed to state a claim against them for violation of the Fourteenth Amendment. *See Stewart v. Baker*, 360 F. App'x 696, 697 (8th Cir. 2010) (stating that a plaintiff must allege in his or her complaint that a defendant was personally involved with or had direct responsibility for the incident that injured him or her (citing *Ellis v. Norris*, 179 F.3d 1078, 1079 (8th Cir. 1999))).

With respect to the claims included in Count 2 of the Amended Complaint, Nibeck has sufficiently stated a claim only as to the alleged unlawful seizure of his posters in violation of the Fourth Amendment. The MPD Defendants argue that, even if Nibeck has sufficiently stated a claim against Cirkl and Kjormoe in Count 2, the claim must be dismissed as to MPD because it is not subject to being sued. *See* MPD Defendants' Brief at 14-16. Whether a municipal entity or department may "be sued is determined . . . by the law of the state where the court is located." *See* Fed. R. Civ. P. 17(b)(3). The Iowa Supreme Court has long held that "wherever it has been the purpose of the legislature to authorize any of the agencies of government to proceed independently of [their] parent municipality, the power to sue or be sued has been expressly given." *Des Moines Park*

*Bd. v. City of Des Moines*, 290 N.W. 680, 681 (Iowa 1940). When a municipal agency or department is empowered "to enforce its [own] rules and regulations," then the agency is also empowered to sue and be sued. *See Kasparek v. Johnson Cty. Bd. of Health*, 288 N.W.2d 511, 515 (Iowa 1980). MPD is a department of the City of Marion, Iowa. MPD is not empowered to enforce its own rules and regulations but is, instead, delegated authority by the City of Marion to exercise the enforcement powers granted to the city by Iowa law. *See Shannon v. Koehler*, No. C 08-4059-MWB, 2008 WL 4735265, at *2 (N.D. Iowa Oct. 13, 2008) (citing Iowa Code § 364.1). Furthermore, the court knows of no express authority allowing MPD to be sued independently of the City of Marion, its parent municipality. Therefore, the court concludes that MPD is not an entity subject to being sued under Rule 17 and Iowa law, and the MPD Defendants' Motion to Dismiss shall be granted as to all claims alleged against MPD.

Accordingly, the court shall deny the MPD Defendants' Motion to Dismiss with respect to the Fourth Amendment claim against Cirkl and Kjormoe included in Count 2. The court shall grant the MPD Defendants' Motion to Dismiss with respect to the Fourth Amendment claim against MPD and the Fifth, Sixth and Fourteenth Amendment claims against all MPD Defendants.[5]

### D. Defamation

In Count 3, Nibeck alleges defamation against Jewell. Amended Complaint at 12. "[A] plaintiff establishes a prima facie claim for defamation by showing [that] the defendant '(1) published a statement that (2) was defamatory (3) of and concerning the plaintiff, and (4) resulted in injury to the plaintiff." *Bertrand v. Mullin*, 846 N.W.2d 884, 891 (Iowa 2014) (quoting *Johnson v. Nickerson*, 542 N.W.2d 506, 510 (Iowa 1996)). A

---

[5] Because the court shall grant the MPD Defendants' Motion to Dismiss with respect to the Fifth, Sixth and Fourteenth Amendment claims for failure to state a claim, the court shall not address those alleged violations in its discussion of qualified immunity below.

statement is defamatory, as required in the second element, if it amounts to "the invasion of another's interest in reputation or good name." *Taggart v. Drake Univ.*, 549 N.W.2d 796, 802 (Iowa 1996). "Generally, a plaintiff must prove the statements were false, made with malice, and caused damage." *Newell v. JDS Holdings, L.L.C.*, 834 N.W.2d 463, 470 (Ct. App. Iowa 2013). Additionally, "the statements must be . . . demonstrably about the person claiming to be defamed." *Huegerich v. IBP, Inc.*, 547 N.W.2d 216, 221 (Iowa 1996) (citing Restatement (Second) Torts § 558). "The truth of a statement is an absolute defense." *Id.* (citing *Jones v. Palmer Comms., Inc.*, 440 N.W.2d 884, 891 (Iowa 1989); 50 Am. Jur. 2d, *Libel & Slander* § 268 (1995); Restatement (Second) of Torts § 581A).

Nibeck's defamation claim is apparently based on the allegation that Jewell instigated the events leading to Nibeck's arrest and seizure of his posters when she complained to law enforcement. *See* Amended Complaint at 12. However, the Amended Complaint is wholly bereft of any factual allegations regarding statements made by Jewell to Cirkl and Kjormoe. The Amended Complaint describes that Jewell filed a written complaint against Nibeck and that she gave Cirkl and Kjormoe posters that they had removed from Nibeck's property on previous instances. *See* Amended Complaint at 5-6. But the Amended Complaint does not allege—directly or indirectly—the content of any statements made by Jewell or any circumstances surrounding Jewell's actions that would permit a reasonable inference that she defamed Nibeck. Instead, Nibeck merely states the legal conclusion that Jewell made defamatory statements against him. Such unsupported legal conclusions are insufficient to state a claim. *See Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). Accordingly, the court shall grant the Jewell Motion to Dismiss with respect to Count 3.

### E. Intentional Infliction of Emotional Distress

In Count 4, Nibeck alleges intentional infliction of emotional distress against the

MPD Defendants and Jewell. Amended Complaint at 13. Specifically, Nibeck alleges that the MPD Defendants "intentionally covered up . . . police misconduct when they knew or should have known that emotional distress would likely result." *Id.* Nibeck's intentional infliction of emotional distress claim against Jewell is apparently based on his belief that Jewell and the MPD Defendants "work[ed] as one entity to file [the criminal] complaint" against Nibeck. *See id.* at 6. The MPD Defendants argue that Count 4 fails to state a claim because the "misconduct" that Nibeck complains of occurred within the scope of Cirkl and Kjormoe's employment such that it cannot support a claim of intentional infliction of emotional distress under Iowa law. MPD Defendants' Brief at 12. Jewell argues that the factual allegations against her do not give rise to the requisite outrageous conduct necessary to state a claim of intentional infliction of emotional distress. *See* Jewell Supplemental Brief at 4-5.

To state a claim of intentional infliction of emotional distress under Iowa law, a complaint must satisfy four elements: "(1) outrageous conduct by the defendant; (2) the defendant's intentional causing, or reckless disregard of the probability of causing emotional distress; (3) the plaintiff has suffered severe or extreme emotional distress; and (4) actual proximate causation of the emotional distress by the defendant's outrageous conduct." *Ette ex rel. Ette v. Linn-Mar Cmty. Sch. Dist.*, 656 N.W.2d 62, 70 (Iowa 2002) (quoting *Taggart*, 549 N.W.2d at 802). "For conduct to be outrageous it must be 'so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Tomash v. John Deere Indus. Equip. Co.*, 399 N.W.2d 387, 392 (Iowa 1987) (quoting *Reihmann v. Foerstner*, 375 N.W.2d 677, 681 (Iowa 1985)). "[I]t is for the court to determine in the first instance, as a matter of law, whether the conduct complained of may reasonably be regarded as outrageous." *Smith v. Iowa State Univ. of Sci. & Tech.*, 851 N.W.2d 1, 26 (Iowa 2014) (quoting *Cutler v. Klass, Whicher & Mishne*, 473 N.W.2d 178, 183 (Iowa

1991)).

The court finds Nibeck has failed to state a claim of intentional infliction of emotional distress against Jewell because an allegation that she merely filed a criminal complaint against Nibeck cannot reasonably be regarded as "outrageous conduct," regardless of the complaint's merits or her motive for filing the complaint. *See Cheek v. ABC Beverage Mfrs., Inc.*, 723 N.W.2d 454, 2006 WL 2560890, at *4 (Iowa Ct. App. Sept. 7, 2006) (unpublished table decision) ("[M]ere participation in [the plaintiff's] prosecution, even if done with malicious intent, cannot establish 'outrageous conduct.'"). Nibeck has also failed to state a claim of intentional infliction of emotional distress against the MPD Defendants. Although the Amended Complaint sufficiently alleges that Cirkl and Kjormoe's arrest of Nibeck and seizure of his posters lacked probable cause, it does no more than allege that their conduct was "wrong," which does not demonstrate the level of egregiousness required to sustain a claim of intentional infliction of emotional distress. *See Hanson v. Hancock Cty. Mem'l Hosp.*, 938 F. Supp. 1419, 1442 (N.D. Iowa 1996) (holding that conduct that is "'wrong' in an abstract sense" will not necessarily "sink to the low of egregiousness required by the Iowa Supreme Court to sustain a claim of intentional infliction of emotional distress"). Even Nibeck's allegation that Cirkl and Kjormoe included embellishments and falsehoods in their reports does not sufficiently allege outrageous conduct. *Cf. Napreljac v. John Q. Hammons Hotels, Inc.*, 461 F. Supp. 2d 982, 1042 (S.D. Iowa 2006) (holding that falsification of accident reports by employer terminating an employee did not amount to outrageous conduct supporting a claim of intentional infliction of emotional distress). Because the allegations in the Amended Complaint do not articulate any conduct that can reasonably be regarded as outrageous, Nibeck has failed to state a claim of intentional infliction of emotional distress against Cirkl and Kjormoe. Additionally, because MPD is not subject to suit, as the court noted above, Nibeck has failed to state a claim of intentional infliction of emotional distress against

MPD. Accordingly, the court shall grant the MPD Defendants' Motion to Dismiss and the Jewell Motion to Dismiss with respect to Count 4.

### F. Qualified Immunity

The court has concluded that Nibeck sufficiently stated § 1983 claims against Cirkl and Kjormoe for infringing on free speech in violation of the First Amendment (Count 1), warrantless arrest without probable cause in violation of the Fourth Amendment (Count 1) and unreasonable seizure of property in violation of the Fourth Amendment (Count 2). The MPD Defendants argue that Cirkl and Kjormoe are entitled to qualified immunity such that these surviving claims must be dismissed. *See* MPD Defendants' Brief at 17-19.

"Qualified immunity shields government officials from liability and the burdens of litigation in a § 1983 action unless the official's conduct violates a clearly established constitutional or statutory right of which a reasonable person would have known." *Gilmore*, 2016 WL 4758552, at *2 (quoting *Snider v. City of Cape Girardeau*, 752 F.3d 1149, 1155 (8th Cir. 2014)). "To overcome a defendant's claim of qualified immunity, the burden falls on the plaintiff to show: '(1) the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional right; and (2) the right was clearly established at the time of the deprivation.'" *Snider*, 752 F.3d at 1155 (alteration omitted) (quoting *Baribeau v. City of Minneapolis*, 596 F.3d 465, 474 (8th Cir. 2010)). "For a right to be clearly established, 'the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Peterson v. Kopp*, 754 F.3d 595, 600 (8th Cir. 2014) (alteration omitted) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). If a warrantless arrest was unsupported by probable cause, an officer is "entitled to qualified immunity if there is at least 'arguable probable cause.'" *Gilmore*, 2016 WL 4758552, at *2 (quoting *Borgman*, 646 F.3d at 522-23). Arguable probable cause exists if the officer mistakenly believes there is probable cause for arrest and the mistake is objectively reasonable. *Id.*

Nibeck's three § 1983 claims all arise from Cirkl and Kjormoe's determination that Nibeck's posters furnished probable cause for his arrest and for seizure of the posters. Therefore, qualified immunity depends on whether Nibeck's right to display the purportedly offensive posters was clearly established, such that Cirkl and Kjormoe's actions are rendered unreasonable. The court concludes that, as alleged, Nibeck had a clearly established right to display posters on his property, even if certain neighbors found them offensive. The United States Supreme Court has long held that persons may not be punished for "the asserted offensiveness" of their speech, absent "separately identifiable conduct" that is subject to regulation without "effectively repressing" speech or absent a "showing of an intent to incite" unlawful behavior. *Cohen v. California*, 403 U.S. 15, 18 (1971). Likewise, the Supreme Court has definitively recognized a "special respect" for speech exercised at the home—a respect that it has explicitly extended to signs displayed by private homeowners in their yards. *City of Ladue v. Gilleo*, 512 U.S. 43, 58 (1994); *see also Jones v. Parmley*, 465 F.3d 46, 56 (2d Cir. 2006) (Sotomayor, J.) ("First Amendment protections . . . are especially strong where an individual engages in speech activity from his or her own private property."). The Amended Complaint alleges no facts to support probable cause for harassment, as noted above, nor does it allege that Nibeck displayed his posters "at a heavily traveled intersection during a busy part of the day," in a manner that "creat[ed] a traffic hazard" or frightened young children, or that he otherwise displayed the posters in a way that would subject them to regulation unrelated to the message conveyed. *See Frye v. Kansas City Missouri Police Dep't*, 375 F.3d 785, 791, 791 n.2 (8th Cir. 2004). In short, the Amended Complaint alleges solely that Cirkl and Kjormoe took the complained-of actions because Nibeck's posters included the word "HIV" and neighbors complained that they were offensive. On these alleged facts, Cirkl and Kjormoe deprived Nibeck of a clearly established right and their probable cause determination was unreasonable. *Cf. Derosier*, 149 F. Supp. 3d at 1294-95 (holding that

complaint adequately alleged that defendant-officers violated clearly established law by arresting the plaintiff for telling newspaper company that he would "take a shot" at delivery persons, where the complaint included no indication that the words were intended as a threat or as harassment (citing *Virginia v. Black*, 538 U.S. 343 (2003))). Accordingly, Cirkl and Kjormoe are not entitled to qualified immunity at this stage of the proceedings.

## VI. CONCLUSION

In light of the foregoing, the court **ORDERS** as follows:

(1) The Motion to Exclude (docket no. 16) is **GRANTED**.

(2) The MPD Defendants' Motion to Dismiss (docket no. 8) is **GRANTED IN PART AND DENIED IN PART**. All claims against MPD are **DISMISSED**. The Fifth Amendment *Miranda* claim (Count 2), Sixth Amendment informed-of-charges claim (Count 2), Fourteenth Amendment conditions of confinement claim (Count 2) and the intentional infliction of emotional distress claim (Count 4) against Cirkl and Kjormoe are all **DISMISSED**. The First Amendment free speech claim (Count 1), Fourth Amendment warrantless arrest claim (Count 1) and Fourth Amendment unreasonable seizure claim (Count 2) against Cirkl and Kjormoe all survive.

(3) The Jewell Motion to Dismiss (docket no. 14) is **GRANTED**. All claims against Jewell are **DISMISSED**.

**IT IS SO ORDERED.**

**DATED** this 25th day of October, 2016.

LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA