**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION**

| | |
|---|---|
| JERRY L. NIBECK, <br><br> Plaintiff, <br><br> vs. <br><br> ADAM CIRKL and MARK KJORMOE, <br><br> Defendants. | No. 16-CV-114-LRR <br><br> **ORDER** |

_____

*TABLE OF CONTENTS*

*I.   INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . *1*

*II.  RELEVANT PROCEDURAL HISTORY* . . . . . . . . . . . . . . . . . . *1*

*III. SUBJECT MATTER JURISDICTION.* . . . . . . . . . . . . . . . . . . . *2*

*IV.  SUMMARY JUDGMENT STANDARD* . . . . . . . . . . . . . . . . . . . *2*

*V.   RELEVANT FACTUAL BACKGROUND*. . . . . . . . . . . . . . . . . . . *4*

    *A.   The Resistance*. . . . . . . . . . . . . . . . . . . . . . . . . . . . *4*
    *B.   The Parties* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *5*
    *C.   The Dispute*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . *5*

*VI.  ANALYSIS.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *8*

    *A.   Nibeck's Arrest* . . . . . . . . . . . . . . . . . . . . . . . . . . . *8*
    *B.   Seizure of the Poster* . . . . . . . . . . . . . . . . . . . . . . . *11*
    *C.   Qualified Immunity*. . . . . . . . . . . . . . . . . . . . . . . . *11*

*VII. CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . *13*

*I.   INTRODUCTION*

The matter before the court is Defendants Adam Cirkl and Mark Kjormoe's (collectively, the "Officers") "Motion for Summary Judgment" ("Motion") (docket no. 43).

*II.   RELEVANT PROCEDURAL HISTORY*

On February 13, 2017, Plaintiff Jerry L. Nibeck filed a Second Amended Complaint

(docket no. 41) which alleged, pursuant to 42 U.S.C. § 1983, that Cirkl and Kjormoe had: (1) infringed on his free speech in violation of the First Amendment; (2) arrested him without a warrant or probable cause in violation of the Fourth Amendment; and (3) unreasonably seized his property in violation of the Fourth Amendment. On August 17, 2017, Cirkl and Kjormoe filed the Motion. On November 21, 2017, Nibeck filed a pro se Resistance (docket no. 64). On November 28, 2017, Cirkl and Kjormoe filed a Reply (docket no. 65). Neither party requests oral argument and the court finds that oral argument is unnecessary. The matter is fully submitted and ready for decision.

### III. SUBJECT MATTER JURISDICTION

The court has original jurisdiction over Plaintiff's claims arising under 42 U.S.C. § 1983 and the United States Constitution. *See* 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). The court has supplemental jurisdiction over any state law claims because they are so related to the claims within the court's original jurisdiction that they form part of the same case or controversy. *See* 28 U.S.C. § 1367(a) ("[T]he district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . . .").

### IV. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Summary judgment is proper 'if the pleadings, the discovery and disclosure materials on file, and any affidavits show'" an absence of a genuine dispute as to a material fact. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (quoting Fed. R. Civ. P. 56(c)(2)). "A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material

if its resolution affects the outcome of the case." *Amini v. City of Minneapolis*, 643 F.3d 1068, 1074 (8th Cir. 2011) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 252 (1986)). "The movant 'bears the initial responsibility of informing the district court of the basis for its motion,' and must identify 'those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact.'" *Torgerson*, 643 F.3d at 1042 (alterations in original) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). Once the movant has done so, "the nonmovant must respond by submitting evidentiary materials that set out 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting *Celotex Corp.*, 477 U.S. at 324).

On a motion for summary judgment, the court must view the facts "in the light most favorable to the nonmoving party." *Id.* (quoting *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009)). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial," and summary judgment is appropriate. *Ricci*, 557 U.S. at 586 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). "The nonmovant 'must do more than simply show that there is some metaphysical doubt as to the material facts' . . . ." *Torgerson*, 643 F.3d at 1042 (quoting *Matsushita*, 475 U.S. at 586). Instead, "[t]o survive a motion for summary judgment, the nonmoving party must 'substantiate his allegations with sufficient probative evidence [that] would permit a finding in [his] favor based on more than mere speculation, conjecture, or fantasy.'" *Barber v. C1 Truck Driver Training, LLC*, 656 F.3d 782, 801 (8th Cir. 2011) (second and third alterations in original) (quoting *Putman v. Unity Health Sys.*, 348 F.3d 732, 733-34 (8th Cir. 2003)). Mere "self-serving allegations and denials are insufficient to create a genuine issue of material fact." *Anuforo v. Comm'r of Internal Revenue*, 614 F.3d 799, 807 (8th Cir. 2010).

## V. RELEVANT FACTUAL BACKGROUND

### A. *The Resistance*

As a preliminary matter, the court addresses the Resistance, which fails to comply with both the Local Rules or the Federal Rules of Civil Procedure. Local Rule 56(b) requires any party resisting a motion for summary judgment to file a brief "respond[ing] to each of the grounds asserted in the motion for summary judgment." LR 56(b)(1). Local Rule 56(b) also requires the resisting party to respond to the moving party's statement of material facts by "expressly admit[ting], den[ying], or qualif[ying] each of the moving party's numbered statements of fact." LR 56(b)(2). The resisting party's denial or qualification "must be supported by references to those specific pages, paragraphs, or parts of the pleadings, depositions, answers to interrogatories, admissions, exhibits, and affidavits that support the resisting party's refusal to admit the statement." LR 56(b). "The failure to respond to an individual statement of material fact, with appropriate appendix citations, may constitute an admission of that fact." *Id.*; *see also* Fed. R. Civ. P. 56(c) (requiring support for factual assertions). The Federal Rules of Civil Procedure similarly provide that if a resisting party:

> fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it; or (4) issue any other appropriate order.

Fed. R. Civ. P. 56(e).

The Resistance is devoid of legal argument and fails to respond to any of the legal grounds for summary judgment asserted in the Motion. Further, the Resistance does not admit, deny or otherwise address any of the facts in the "Statement of Undisputed Facts in Support of [the] Motion for Summary Judgment" ("Statement of Facts") (docket no. 43-

2). Rather, the Resistance provides new factual allegations that are both immaterial to the Motion and unsupported by citations to the factual record. *See* Local Rule 56(b); *see also* Fed. R. Civ. P. 56(c).

While the court is cognizant that Plaintiff is appearing pro se, this does not excuse his noncompliance with the Federal Rules of Civil Procedure and the Local Rules. *See, e.g.*, *Beck v. Skon*, 253 F.3d 330, 333 (8th Cir. 2001) (concluding that a pro se plaintiff "was required to respond to defendants' motions with specific factual support for his claims to avoid summary judgment"). Further, the court has previously cautioned Nibeck that his prior, improperly submitted, pro se Resistance (docket no. 50) did not comply with Local Rule 56 and provided him additional time to file a proper resistance and seek counsel. *See* September 27, 2017 Order (docket no. 55) at 3-4. Despite the additional time, the Resistance fails to cure the defects of its predecessor. As such, the court finds that allowing Nibeck additional time to amend the Resistance would be futile and would unduly delay the adjudication of this case.

Accordingly, the court shall consider any material facts contained in the Statement of Facts as undisputed, if those facts are properly supported by citations to the Appendix (docket nos. 43-3 to 43-8).

### B. *The Parties*

Nibeck is an individual residing in Marion, Iowa. Statement of Facts ¶ 3. At all relevant times, Donna Jewell, her husband Danny Tallabas and her 10-year old daughter M.J. (collectively, the "Jewell Family") lived adjacent to Nibeck's property. *Id.* ¶ 6. Cirkl and Kjormoe are officers employed by the Marion Police Department ("MPD"). *Id.* ¶¶ 1-2.

### C. *The Dispute*

The events at issue involve a series of posters that Nibeck displayed on his property. *Id.* ¶¶ 10-13. The posters contained various messages referencing a green tree house. *Id.*

¶ 13. At all relevant times, there was a green tree house on the Jewell Family's property that was visible from Nibeck's property. *Id.* ¶¶ 8-9.

From May 27, 2014 to June 27, 2014, Nibeck hung 22 inch by 28 inch posters on the fence surrounding his property. *Id.* ¶ 10; *see also* Second Amended Complaint ¶¶ 8-9 (admitting Nibeck hung the offending posters and the language of at least two posters). At any given time, Nibeck would have two posters on his property, with at least one poster facing the Jewell Family's property. Statement of Facts ¶ 11. Nibeck hung the posters on at least five to seven occasions during this period. *Id.* ¶ 12.

One poster stated, "My Dad Told Me, When He was little, He Taught Little girls, about The Birds and Bees, In a Green Tree House, Was your Daughter Taught in a Green Tree House?" *Id.* ¶ 13 (formatting in original). Nibeck alleges that this poster was removed without his knowledge. *Id.* ¶ 14. Nibeck replaced this poster with a duplicate once or twice in an attempt to catch whoever removed the poster. *Id.* ¶¶ 15-16. Nibeck also hung posters stating: "My Mom Told Me, That when She was little, a dirty old Man, IN A green Tree House HIV was eating the neighborhood girls little cookie," *id.* ¶ 18 (formatting in original), and "My, mom told me, when she was, little, a dirty old man ate her cookie, in a green tree house, did your little girls cookie, get ate in a green tree house, by a dirty old man?" *id.* ¶ 19 (formatting in original).

On June 6, 2014, Nibeck "screamed to the neighborhood about one of his posters" and also yelled at Jewell regarding the tree house. *Id.* ¶ 21. According to Jewel, Nibeck yelled "My dad taught little girls about birds and bees in a green tree house." *Id.* ¶ 22. According to Nibeck, he yelled something to the effect of "my mom told me that when she was little a dirty old man was eating her cookie in a green tree house." *Id.* ¶ 23. This language is similar to the language of his posters. Jewell called the MPD and Kjormoe responded to the scene. *Id.* ¶ 25-26. Kjorme warned Nibeck against yelling at Jewell regarding the tree house. *Id.* ¶ 27. Later that day, Tallabas called the MPD to complain

6

that Nibeck was again yelling about the tree house. *Id.* ¶ 28. An officer responded, but was unable to make contact with Nibeck. *Id.* ¶ 29. Following this incident, Nibeck placed posters on his fence with similar content. *Id.* ¶ 30.

On June 9, 2014, Jewell contacted the MPD about Nibeck. *Id.* ¶ 31. Kjormoe spoke with Jewell about Nibeck's actions and told Jewell to contact the MPD if there were further issues. *Id.* ¶¶ 32-33.

On June 27, 2014, S.G., a minor, called the MPD to complain about the posters on Nibeck's property. *Id.* ¶ 34. Cirkl and Kjormoe responded to the call. *Id.* ¶ 35. Cirkl observed two posters, one on a tree and the other on the fence, with the message: "My mom, told me, that when she was little, a dirty old man, in a green tree, house, was eating the neighborhood girls little cookie in a <u>green tree house</u> HIV." *Id.* ¶¶ 37, 39. The posters faced, and were visible from, the Jewell Family's property and the public street. *Id.* ¶¶ 37-38; 53-54.

Cirkl spoke with Nibeck about the posters and Nibeck claimed that they were a "statement from [his] mother." *Id.* ¶ 41. Cirkl asked Nibeck to take down the posters. *Id.* ¶ 43. Nibeck responded that he would do so when the tree house was removed from the Jewell Family's property. *Id.* ¶ 44. Kjormoe saw the posters and recorded them on his patrol vehicle's dashboard camera. *Id.* ¶¶ 53-54. The Officers asked Nibeck to take the posters down multiple times but Nibeck refused. *Id.* ¶¶ 58-61, 66.

Kjormoe left Nibeck's property and asked Jewell if she wanted to file a complaint. *Id.* ¶ 67. Jewell stated that she wanted to file harassment charges against Nibeck and completed a statement in support such charges. *Id.* ¶¶ 72, 74. Jewell's statement detailed Nibeck's actions. *See* Victim/Witness Statement, Appendix (docket no. 43-5) at 9. During this time, Nibeck took down the posters. Statement of Facts ¶ 70. While Nibeck was in the yard, Cirkl seized one poster from Nibeck as evidence of harassment. *Id.* ¶ 71. After Kjormoe finished speaking with Jewell, the Officers arrested Nibeck for harassment

7

in the third degree. *Id.* ¶ 79.

## VI. ANALYSIS

Nibeck contends that by arresting him and seizing his poster, Cirkl and Kjormoe: (1) infringed on his free speech in violation of the First Amendment, *see* Second Amended Complaint ¶¶ 32-40, (2) arrested him without a warrant or probable cause in violation of the Fourth Amendment, *see id.* ¶¶ 46-52, and (3) unreasonably seized his property in violation of the Fourth Amendment, *see id.* ¶¶ 41-45. The Officers argue that they had probable cause to arrest Nibeck for harassment such that the arrest did not violate either the First or Fourth Amendment. Brief in Support of Motion (docket no. 43-1) at 12-22. Cirkl and Kjormoe also contend that they had at least arguable probable cause for the arrest and, as such, are shielded from liability under the qualified immunity doctrine. *Id.* at 22-25.

### A. *Nibeck's Arrest*

To successfully state a § 1983 claim alleging a violation of First Amendment rights, Nibeck must establish that Cirkl and Kjormoe deprived him of his right to free speech when they arrested him for the messages displayed on his posters. *See Smithson v. Aldrich*, 235 F.3d 1058, 1063 (8th Cir. 2000) (finding that the arresting officers had an objectively reasonable basis to believe the defendant's speech was not protected). Not all speech is protected by the First Amendment. "Free speech protections do not extend . . . to certain categories or modes of expression, such as obscenity, defamation, and fighting words." *Phelps-Roper v. Koster*, 713 F.3d 942, 948 (8th Cir. 2013) (quoting *Doe v. Pulaski Cty. Special Sch. Dist.*, 306 F.3d 616, 622 (8th Cir. 2002) (en banc)). Iowa's harassment statute makes it unlawful to communicate a message "without legitimate purpose and in a manner likely to cause the other person annoyance or harm" and with the specific "intent to intimidate, annoy, or alarm another person." Iowa Code § 708.7(1)(a)(1). Harassment, as defined in the Iowa Code, is not protected by the First

8

Amendment. *See Iowa v. Evans*, 672 N.W.2d 328, 331 (Iowa 2003) (noting that "First Amendment considerations raised with respect to [§ 708.7(1)(a)] . . . were obviated because of the requirement that the communication be 'without legitimate purpose'").

To successfully proceed on a § 1983 claim alleging a violation of Fourth Amendment rights, Nibeck must establish that Cirkl and Kjormoe lacked probable cause to arrest Nibeck. *See Gilmore v. City of Minneapolis*, 837 F.3d 827, 832 (8th Cir. 2016) ("A warrantless arrest is consistent with the Fourth Amendment if it is supported by probable cause . . . ." (quoting *Borgman v. Kedley*, 646 F.3d 518, 522-23 (8th Cir. 2011))). "A law enforcement officer has probable cause 'when the totality of the circumstances at the time of the arrest are sufficient to lead a reasonable person to believe that the defendant has committed or is committing an offense.'" *Id.* (quotation marks omitted) (quoting *Borgman*, 646 F.3d at 523). Accordingly, if the Officers had probable cause to arrest Nibeck for harassment, then the arrest did not violate either the First or Fourth Amendment. *See Habiger v. City of Fargo*, 80 F.3d 289, 295 (8th Cir. 1996) ("[I]f the police officers had probable cause to believe that [the defendant] was violating the [court's temporary restraining order] . . . his arrest was valid and would not violate either the Fourth or the First Amendment").

In this case, the undisputed facts establish that there was probable cause to arrest Nibeck for harassment. Over the period of a month, Nibeck continually hung posters on his property that were visible from both the Jewell Family's property and the public street. The posters contained sexually explicit messages, specifically referencing the perpetration of sexual acts on the reader's "daughter" or a "neighborhood girl" in a green tree house. The Jewell Family had a green tree house for their young daughter, M.J., that was visible from Nibeck's property. In addition to hanging the sexually explicit posters, Nibeck verbally harassed his neighbors regarding their tree house. On June 6, 2014, Nibeck yelled at Jewell about the tree house and repeated the phrases that were contained on his

posters. The MPD was called and Nibeck was warned against yelling at Jewell about the tree house. Later that same day, Tallabas called the MPD to report that Nibeck was again yelling about the tree house.

Based on these facts, Cirkl and Kjormoe had an objectively reasonable basis to believe that Nibeck displayed the posters "without legitimate purpose and in a manner likely to cause the other person annoyance or harm" and with the "intent to intimidate, annoy, or alarm another person." Iowa Code § 708.7(1)(a)(1). Both of the Officers were aware of the material facts of this case based on the repeated complaints filed with the MPD, Jewell's formal harassment complaint and their own observations. In light of the circumstances, the Officers had reason to believe that the posters constituted harassment aimed at the Jewell Family. The obvious connection between the posters' reference of a little girl in a green tree house and the green tree house on the Jewell Family's property bolsters this conclusion. Further, on the day of the arrest, Nibeck told Cirkl that he would remove the posters when the Jewell Family removed their green tree house, clearly tying the posters to the Jewell Family. The Officers also knew, based on complaints that they had received, that Nibeck knew, or should have known, that the posters upset his neighbors. *See Evans*, 672 N.W.2d at 331 (noting that intent to harass may be established if a person knows, or should have known, "that his conduct would alarm" the recipient of the message). In view of the above, and Iowa case law excepting harassment from First Amendment protections, the court concludes that the Officers had probable cause to arrest Nibeck for harassment. *See Gilmore*, 837 F.3d at 832 (stating probable cause standard). Thus, Cirkl and Kjormoe did not violate Nibeck's constitutional rights.

Accordingly, the court shall grant the Motion as to Counts I and II.

### B. *Seizure of the Poster*

The Fourth Amendment does not protect against all searches and seizures, but instead protects only against "unreasonable" searches and seizures. U.S. Const. amend. IV. A warrantless seizure of private property is per se unreasonable and in violation of the Fourth Amendment unless the seizure was supported by an exception to the warrant requirement. *See PPS, Inc. v. Faulkner Cty., Ark.*, 630 F.3d 1098, 1102 (8th Cir. 2011) (discussing the plain view doctrine). The plain view doctrine is an exception to the warrant requirement and makes the seizure of property presumptively reasonable "if the seizing officer is (1) 'lawfully in a position from which to view the object, (2) the incriminating character of the object is immediately apparent, and (3) the officer has a lawful right of access to the object.'" *Id.* at 1103-04 (alterations omitted) (quoting *United States v. Muhammad*, 604 F.3d 1022, 1027 (8th Cir. 2010)). "Such seizures must still meet the probable cause standard." *Id.* at 1104.

Cirkl and Kjormoe seized one poster from Nibeck as evidence of harassment. As discussed above, the Officers had probable cause to believe that Nibeck's posters constituted harassment. The posters were visible from the Jewell Family's property and the public street. Cirkl confiscated one poster from Nibeck after Nibeck took down the posters following repeated requests from the Officers. Therefore, the Officers had probable cause to believe that the posters were evidence subject to seizure under the plain view doctrine.

Accordingly, the court shall grant the Motion as to Count III.

### C. *Qualified Immunity*

Even if probable cause did not exist for Nibeck's arrest, summary judgment would still be appropriate based on qualified immunity. "Qualified immunity shields government officials from liability and the burdens of litigation in a § 1983 action unless the official's conduct violates a clearly established constitutional or statutory right of which a reasonable

person would have known." *Gilmore*, 837 F.3d at 832 (quoting *Snider v. City of Cape Girardeau*, 752 F.3d 1149, 1155 (8th Cir. 2014)). "To overcome a defendant's claim of qualified immunity, the burden falls on the plaintiff to show: '(1) the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional right; and (2) the right was clearly established at the time of the deprivation.'" *Snider*, 752 F.3d at 1155 (alteration omitted) (quoting *Baribeau v. City of Minneapolis*, 596 F.3d 465, 474 (8th Cir. 2010)). "For a right to be clearly established, 'the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Peterson v. Kopp*, 754 F.3d 594, 600 (8th Cir. 2014) (alteration omitted) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). If a warrantless arrest was unsupported by probable cause, "an officer is entitled to qualified immunity if there is at least 'arguable probable cause.'" *Gilmore*, 837 F.3d at 832 (quoting *Borgman*, 646 F.3d at 522-23). Arguable probable cause exists if the officer mistakenly believed that there was probable cause for the arrest and the mistake was objectively reasonable. *Id*.

Cirkl and Kjormoe "surely thought that they had probable cause to arrest [Nibeck]. Even if this was a mistake, the purpose of the qualified immunity doctrine is to provide ample room for mistaken judgments and to protect 'all but the plainly incompetent or those who knowingly violate the law.'" *Habiger*, 80 F.3d at 297 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)); *see also Smithson*, 235 F.3d at 1062-63 (finding that officers had at least arguable probable cause to arrest the defendant for violating a sound ordinance). Nibeck presented no facts suggesting that the Officers knowingly violated the law or that their decision was "plainly incompetent." As discussed above, the undisputed facts establish that it was objectively reasonable for the Officers to believe that they had probable cause to arrest Nibeck for harassment. Accordingly, Cirkl and Kjormoe are entitled to qualified immunity on all counts.

## *VII. CONCLUSION*

For the foregoing reasons, it is hereby **ORDERED**:

(1) Cirkl and Kjormoe's Motion for Summary Judgment (docket no. 43) is **GRANTED**;

(2) The Clerk of Court is **DIRECTED** to enter judgment in accordance with the above findings; and

(3) The Clerk of Court is **DIRECTED** to terminate all outstanding motions.

The Final Pretrial Conference is **CANCELLED** and the trial date is **VACATED**.

**IT IS SO ORDERED.**

**DATED** this 20th day of January, 2018.

LINDA R. READE, JUDGE
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF IOWA